*220 Opinion of the Court, by
Judge Mills.
Under a decree in favor of the now appellant, the mills and farm of a certain Tlmmas Caldwqll, were sold, and the Appellant became the purchaser. Grimes, the present appellee, resided upon the estate at the time, claiming under some contract made with Caldwell, as a purchaser from him; hut of what kind does not appear in this cause. Immediately after (he purchase, Giiines agreed to become the tenant of the appellant, and to receive and hold possession under him, for one year; and accordingly, an article of agreement was entered into and sigued by the parHes, in which the ap- *221 »$pe-st'ipula>t§djt<5 pay tb.e.rent of sevepibufidred- arid ty-dollars, a-a&'g^ed bis -notes for the ^amt,* paya ble by instalments of three, six* nine and tw’elye, months, each-being ope-hundred apd eighty-seven ■ dolors and fifty cents; and aithe end ofHhe,term, bound'himself to restore the estate.- The-appellpnt/stipulaj:e<j,to keep the appellee in possession, and to allow tlie credit for such necessary and ‘lasting improvements or repairs, as should be requisite in the opinion of the ap-pellee, and be consented to by the appellant, during the term, to the amount of two hundred and twenty4ix dol-la-rs, eighty-cents, and no more, on the last instalments. At the- close of-ibis year, a new lease was made for one year longer, and reduced to writing, in the form of an article of agreement, signed by the panties, in which the same rent was- stipulate#;with a little variation |ts to tlfe instalments, ancfals^Mp agreement that the lásífe-stalment, which was two hundred dollars, might pended “ in repairs to said mills, provided.’thai the cessary repairs to the mills might require that sum, within the year, in the opinion and judgment of both parties, or so much thereof as might he-judiciously, expended in repairs, in the judgment of both parties.”
After the close o£the lastyear, the apgpliee brought,^ this action of assumpsit, and declared in two counts for? work and labor, care, diligence, an,d materials expend-’ ed on the mills and farm afjwesaid, during the existence of the aforesaid leases, and exhibited and proved a large account for improvements done upon the premises, of nearly fourteen hundred dollars value, and showed that the prices were reasonable. He also proved, that while he was building a bridge across the mill-dam, the appellant was there and dined with the appellee, and said in conversation at that time, that the job was an arduous undertaking, bathe had no doubt it would be-useful; that the appellant lived in the neighborhood, and was at and passed'the riiills frequently, and asilen conversed with the appellee, while the work was doing; but tiie witnesses did not hear what was said. One of these occasions was while the appellee was clearing of land, which was an act directly contrary to the stipulations ofithe léase. One withess deposed, that on the day of sale, the commissioner,appointed to execute the decree* by selling the farm .and mills, wbo is since dead, informed him that Hhe appellant had bought the’land *222 dnd milj^;, Jkit the appellee was to keep .them,and had ' ?a¡'cba§éd-tt^eín of the appellant by., a -parol-agreement, ; ■' vas to" pay interest af the rate of tep per centum per annum, on the amount of the price,, which was the same sum due from Caldwell to the appellant, for which the land was sold, that is, five thousand dollars, with sfTme interest and costs, until he, the appellee, paid up the price. The witness further stated, that in a conversation with the appellant, a few days afterwards, the precise expressions of which, he could not recollect, his Impression was, that he understood about the same thing from the appellant, which he had learned from the commissioner. But some time afterwards, he, the witness, was informed that the appellee held the mills under lease.
T^he appellant, on his par,f,¿introduced the leases, or tiyp articles of agreement, wffeh appeared to be in his . oivn hand-writing, except the signatures of the witnesses and appellee. He proved, that at the close of the first year, he settled with the appellee, and gave him credit for an account for improvements and repairs, to the amount of two hundred and eleven dollars and three quarters, being all the improvements then claimed, and took his note ,for the balance of rent then due, on which he, the appellee, afterwards confessed judgment, after a small credit was endorsed for grinding and sawing. This last witness, who was the appellant’s son-in-law, Iieard no further claim for improvemenfs at that time. The same witness further stated, that at the time the' second agreement or lease was entered into, he went with the appellant to the appellee’s house, when tire appellant proposed to rent the mills another year. The appellee appeared t(f be angry, and observed that he might as well die by the sword as famine; but after a while, he was reconciled and entered into the second agreement. This was, in substance, all the evidence, except sifeh as went either to increase or diminish, on the respective sides, the value of the improvements for . which the suit was brought.
The appellee, on this evidence, contended that there was a sale to him, verbally, of the farm and mills, known only to the commissioner; that the leases were only colourable, to cover the interest of ten per centum on the price; while the appellant insisted for the transaction being as stated upon the face of the writings, .and: that there was no sale.
*223 dence that the' appellee made the improvements claimed, under a verbal agreement for the purchase ofthe property, which had never been'consümmated or reduced to writing, the appellee was entitled to a ve.rdict.Ty their Valuer so far as the imprQverrffents were necessáry and valuable' to the appellant, as proprietor of tlje and made with his-privity, consent and approbation. This instruction’was gi'ven by the court.
The appellant moved the court on his part, to instruct the jury,'that if they'were satisfied, from the evidence, that the1 con'f-raots for renting the premises were reduced to writing, they could not find for the appellee in this form of action, unless the parties authorised the making of the improvements by some subsequent don- * tract. This application 'was overruled by the court. •<
•After verdict, the appellant moved for a new trial, on ' the ground that the verdict was against the law and evidence of the case. This motion was, also, overruled. And the appellant having excepted to these opinions and spread the evidence upon the record, has brought the whole case before this court by appeal: and in his assignment of error, complains of these decisions of the court below.
The principle involved in the instruction given by the court below, contains within it, this simple inquiry, can a person who has bought and possesses land by a parol contract, which cannot be enforced under our act toprevent frauds and perjuries, recover from his vender the ameliorations and improvements made upon the land, while he thus held it, in an action of assumpsit?
It has been already settled by this court, in the case of Keith vs. Paton, 1 Marsh. 28, that the consideration j^aid'foAand under such circumstances, may be recovered back; a^d it seems evident, that an action for money had and received, or detinue or trover" for the property-paid, or a quantum -meruit for labor and services, paid as the price of the land, might be recovered back. But whether the ameliorations of the soil made in the mean time, can be so recovered, is a different question.. No doubt, the party, in some such cases, is entitled to some remedy for improvements, and the opposite side for rents and profits, and this court has; in suits in chancery, directed one to ba discounted against *224 tHe other. ;-Bu-t still, this does not answer tbe question-, whether'any'.acfion at latv-can be brought, and-if so,'is this the proper one? The jurisdiction ofs a court of equity over a subject, is not conclusive that no action at law will lie.
We have said, that in some such cases, recovery for ameliorations may be had. But we would not be understated as saying, that such recovery could b-e had in' every case; for if the purchaser should choose to live upon the land at such an uncertaintj’-, and should make such amelioration, and should himself disaffirm the contract and never offer to fulfil it, and cast the improvements made upon the hands of his adversary, and thus attempt to make him a debtor to that amount, against his consent, and without his default, the right to recover the value of improvements, in such case, would be very problematical. At all events, if, in such case, they .could be recovered, it could not be in an implied as-sumpsit; for there would be no ground to presume a promise or undertaking.
If we take this case on a still broader ground, we should be at a loss to perceive the principle on which an action of assumpsit could be maintained. In the case of money or property paid to the vender, for the land itself, when he had only given his promise to convey, and should refuse to fulfil it, as such promise is of no avail in law, the price may be recovered back, oh the principle that the consideration on which it was paid,, happens to fail. But, with regard to ameliora-tions made under such circumstances, they are not designed for the use of the seller., He is not instrumental in causing them to be made, as he is in case of payment of the price. They may or may not be made, at the election of the purchaser; and in searching the principles over, for which an implied assumpsit will lie, we discover not one which would support the action. If the seller can be at all made liable for them, it must he outlie principle of equity, that he ought not, when the improvements are delivered over to him, to be enriched by another’s loss.
It is true, an implied assumpsit will lie for work and labor done for the defendant upon his request and assent, without any fixed price, or any express promise to pay; but the labor must be his, and the work be done Jor him, and not for another, and the work afterwards *225 *.bappen to became his, before the action Catire sustSin-~*ed. We, therefore, conceive that whatever remedy the appellee may have,'»jtL}s not by an implied assumpsit for work and lab*or,.and£hat tKe court b^low consequently erred in instructing the jury that the appellee was entitled to-recover, if the facts should be as he contended. if this question was not against the appellee, we should not be disposed to disturb the verdic-tj because the court overruled the application to instruct, made by the appellant. The proposition made by him, involved in it the principle,'that the writings controlled the contract andi excluded the. parol evidence of a verbal sale. It is time, that writings cannot, in general, be affected or varied .by parol proof; but it is the effect of the statutes against usury, to alter this principle, and to let in the parol proof, to show thereby that there was usury, although the writings negative the fact.
As to the question of a new trial, it is unnecessary to say any thing, as it necessarily results from the opinion already expressed, that the court below ought not to have permitted the verdict to stand.
The judgment must be reversed with costs, and the verdict be set aside, and the cause be remanded, for new proceedings to be there liad, not inconsistent with this opinion.